UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

PETER CANABUSH,

                                 **Plaintiff,**

vs.                                                 1:13-CV-429
                                                             (FJS/CFH)
**COMMISSIONER OF SOCIAL SECURITY,**

                                 **Defendant.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

THE LAW OFFICES OF                   Steven R. Dolson, Esq.
STEVEN R. DOLSON, PLLC             Maggie W. McOmber, Esq.
126 N. Salina Street
Suite 3B
Syracuse, New York 13202
*Attorney for Plaintiff*

Social Security Administration             Monika K. Crawford, Esq.
Office of General Counsel
26 Federal Plaza, Rm. 3904
New York, NY 10278
*Attorney for Defendant*

**Christian F. Hummel, U.S. Magistrate Judge:**

# REPORT-RECOMMENDATION AND ORDER[1]

## INTRODUCTION

Plaintiff Peter M. Canbush brings the above-captioned action pursuant to 42 U.S.C. § 405(g) seeking a review of the decision from the Commissioner of Social Security ("Commissioner") that denied his application for disability insurance benefits ("DIB") and supplemental social security income ("SSI").

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

## PROCEDURAL BACKGROUND

On October 20, 2010, plaintiff filed an application for DIB and SSI benefits. (T. 89)[2]. Plaintiff was 46 years old at the time of the application with prior work experience as a laborer/driver. (T. 111). Plaintiff claimed that he became unable to work beginning on September 8, 2010, due to diabetes, high cholesterol, anxiety, thyroid, acid reflux, ulcerated right toe and neuropathy. (T. 110).

On February 16, 2011, plaintiff's application was denied and plaintiff requested a hearing by an Administrative Law Judge ("ALJ"), which was held on January 11, 2012. (T. 10, 47). Plaintiff appeared with an attorney. On February 16, 2012, the ALJ issued a decision denying plaintiff's claim for benefits. (T. 10-21). The Appeals Council denied plaintiff's review on March 7, 2013, making the ALJ's decision the final determination of the Commissioner. (T. 1-5). This action followed.

## DISCUSSION

The Social Security Act (the "Act") authorizes payment of disability insurance benefits to individuals with "disabilities." The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the

---

[2]"(T.)" refers to pages of the Administrative Transcript, Dkt. No. 8.

2

> claimant is not capable of continuing in his prior type of work, the
> Commissioner must find him disabled if (5) there is not another type
> of work the claimant can do." The claimant bears the burden of proof
> on the first four steps, while the Social Security Administration bears
> the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (internal citations omitted).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw*, 221 F.3d at 131. Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

The ALJ found at step one that plaintiff has not engaged in substantial gainful activity since September 7, 2010. (T. 12). At step two, the ALJ concluded that plaintiff suffered from the following severe impairments: diabetes, ulcerated toe, anxiety and neuropathy. (T. 12). At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the Listing of Impairments. The ALJ then found the plaintiff had the Residual Functional Capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) and unskilled work as defined in 20 CFR 404.1568(a) and 416.968(a) except: claimant cannot be exposed to extreme temperatures; claimant cannot be exposed to concentrated respiratory irritants; claimant cannot climb ladders or scaffolding; claimant can occasionally climb stairs; and claimant requires occasional supervision to perform detailed tasks". (T. 15). At step four, the ALJ concluded that

plaintiff was not capable of performing any of his past relevant work. (T. 19). At step five, relying on the Medical-Vocational Guidelines ("the grids") set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ found that plaintiff had the RFC to perform jobs existing in significant numbers in the national economy. (T. 20). Therefore, the ALJ concluded that plaintiff was not under disability as defined by the Act.

In seeking federal judicial review of the Commissioner's decision, plaintiff argues that the ALJ failed to properly assess plaintiff's RFC and improperly evaluated plaintiff's credibility.

**I.     RFC**

Residual functional capacity is:

> "what an individual can still do despite his or her limitations.... Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."

*Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999) (quoting SSR 96 8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims ("SSR 96 8p"), 1996 WL 374184, at *2 (S.S.A. July 2, 1996)). In making the RFC determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). The ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and plaintiff's subjective evidence of symptoms. 20 C.F.R. §§ 404.1545(b)-(e).

Here, the ALJ found:

4

>    the plaintiff has the Residual Functional Capacity ("RFC") to "perform
>    light work as defined in 20 CFR 404.1567(b) and 416.967(b) and
>    unskilled work as defined in 20 CFR 404.1568(a) and 416.968(a)
>    except: claimant cannot be exposed to extreme temperatures; claimant
>    cannot be exposed to concentrated respiratory irritants; claimant
>    cannot climb ladders or scaffolding; claimant can occasionally climb
>    stairs; and claimant requires occasional supervision to perform
>    detailed tasks".  (T. 15).

Plaintiff presents two challenges to the RFC assessment.  Plaintiff claims that "it is reasonable to conclude that his neuropathy renders him unable to perform light work as light work requires a great deal of standing".[3]  Plaintiff also claims that the ALJ failed to incorporate plaintiff's use of a cane into the RFC analysis.

### A.  Neuropathy[4]

Plaintiff relies upon the medical record from Dr. Rose Domingo to support his claim that his neuropathy precludes him from performing light work.

On October 26, 2011, plaintiff appeared for a neurological consult by Rose Domingo, M.D. at Albany Medical Center at the request of another physician.  Dr. Domingo examined plaintiff on one occasion and was asked to provide an opinion regarding plaintiff's neuropathy.  (T. 412 - 419).  At the examination, plaintiff complained of numbness in his lower extremities that caused him to stumble and rendered him unsteady.  Plaintiff described the pain as constant

---

[3] The regulations define light work as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[4] Diabetic neuropathy is a chronic, symmetrical sensory polyneuropathy affecting first the nerves of the lower limbs.  *Dorland's Illustrated Medical Dictionary*, 1132 (31st ed. 2007).

when walking. Plaintiff also complained of small symptoms in his upper extremities. Dr. Domingo noted that plaintiff suffered from diabetes that was "poorly controlled". Plaintiff admitted to daily marijuana use and prior cocaine use. Upon examination, the doctor noted that plaintiff's gait was unsteady; plaintiff had full strength in all extremities; and muscle tone and bulk were normal. (T. 414). Dr. Domingo did not observe or make any reference to a cane or other ambulatory device. Plaintiff was able to rise from a seated position without difficulty. Dr. Domingo diagnosed plaintiff with length dependent sensorimotor peripheral polyneuropathy with gait instability that was diabetic in nature. The doctor recommended various medications but noted that the primary treatment was tighter glycemic control to prevent progression and noted that medications would provide limited benefit if plaintiff's diabetes was poorly controlled.

Having reviewed Dr. Domingo's report and the medical record as a whole, the Court finds that plaintiff's argument is not supported by objective medical evidence. The Second Circuit has defined a treating physician as one "who has provided the individual with medical treatment or evaluation and who has or had an ongoing treatment and physician-patient relationship with the individual." *Coty v. Sullivan*, 793 F.Supp. 83, 85 86 (S.D.N.Y.1992) (quoting *Schisler v. Bowen*, 851 F.2d 43 (2d Cir.1988)). Dr. Domingo examined plaintiff on one occasion for a consult. The doctor did not have an ongoing relationship with plaintiff and thus, Dr. Domingo was not plaintiff's treating physician. Moreover, while Dr. Domingo diagnosed plaintiff with neuropathy, she never opined or concluded that plaintiff's neuropathy was a substantial limitation to his ability to perform work related functions. "A diagnosis alone is insufficient to establish a severe impairment as instead, the plaintiff must show that the medically determinable impairments significantly limit the ability to engage in basic work activities." *Alford v. Colvin,* 2013 WL 6839554, at *4 (N.D.N.Y. 2013) (citing 20 C.F.R. § 404.1521(b)). In this matter, the entire

medical record lacks any functional analysis or opinion from any treating or consultative physician indicating that plaintiff's neuropathy imposes significant limitations upon plaintiff's ability to perform work related activities. *See Tellone v. Comm'r of Soc. Sec.*, 2010 WL 610336, 6 (N.D.N.Y. 2010) (the plaintiff's arguments were unpersuasive in light of the lack of evidence showing that the plaintiff's peripheral neuropathy was sufficiently severe and the substantial evidence indicated that the plaintiff was capable of performing light work). In addition, the medical records indicate that plaintiff failed to follow Dr. Domingo's treatment plan for his neuropathy. In November 2011, plaintiff was examined at Community Care Physicians. The examiner noted that Dr. Domingo prescribed Neurontin[5] but that plaintiff failed to fill the prescription or re-contact Dr. Domingo after the October 2011 examination. (T. 520). The Second Circuit has held that remediable impairments are not disabling. *Edwards v. Astrue,* 2010 WL 3701776, 11 (N.D.N.Y. 2010) (citing *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir.1983) (physicians were frustrated by the plaintiff's refusal to help himself concerning his hypertension and diabetes) (citations omitted)).

    Despite the dearth of evidence regarding plaintiff's inability to work due to his neuropathy, the ALJ clearly considered plaintiff's neuropathy in his evaluation of plaintiff's abilities. The RFC includes limitations on plaintiff's ability to climb ladders, stairs and scaffolding. These limitations were not discussed by any treating or consultative examiner. Moreover, the record is devoid of any documentation regarding these limitations. Nevertheless, the plaintiff testified at his administrative hearing that he encountered difficulties climbing stairs and thus, the ALJ included these restrictions. (T. 33). Plaintiff suggests that additional limitations should have been

---

[5] Neurontin is an anticonvulsant used as adjunctive therapy in the treatment of partial seizures. *Dorland's* at 764, 1287.

considered but provides nothing more than unsubstantiated allegations that his neuropathy impacts his ability to perform light work. Accordingly, on this issue, the Court finds that the ALJ's RFC analysis is supported by substantial evidence.

### B.  Assistive Device

Plaintiff also claims that the ALJ failed to consider plaintiff's use of a cane in the RFC analysis. The Commissioner argues that the ALJ properly acknowledged plaintiff's alleged need for a cane but determined that his testimony regarding the device was not credible.

"SSR 96 9p requires consideration of whether a claimant uses a 'medically required hand-held assistive device' . . . [t]o qualify as 'medically required,' there must be 'medical documentation establishing the need for a hand-held device' and that documentation must 'describ[e] the circumstances for which it is needed' ". *Dahl v. Comm'r of Social Sec.*, 2013 WL 5493677 (N.D.N.Y. 2013) (quoting SSR 96 9p, 1996 WL 374185, at *7)). The burden to establish such medical necessity rests with a claimant. *Id.* (citing *Howze v. Barnhart*, 53 F. App'x 218, 222 (3d Cir. 2002). "The precise documentation that a claimant must provide is not yet well-established in case law, but jurisprudence from within and outside this circuit indicate that the bar is high; it must unambiguously match all of the SSR 96 9p's detailed criteria." *Id.* (citing, *inter alia, Tripp v. Astrue*, 489 Fed. App'x 951, 955 (7th Cir. 2012) (claimant must provide an "unambiguous opinion from a physician stating the circumstances in which an assistive device is medically necessary")).

In this matter, the ALJ acknowledged plaintiff's testimony regarding his use of a cane:

> Claimant alleged that he uses a cane daily and needs to use a cane when walking long distances or standing for longer periods of time because of his pain in the legs from neuropathy. At the hearing, claimant testified that a doctor prescribed the cane. (T. 16).

8

Upon review of the record, the Court finds that the ALJ did not commit reversible error when he failed to incorporate plaintiff's use of an assistive device and/or cane into the RFC. Plaintiff has not met the burden of establishing, with unambiguous evidence, that any ambulatory device was medically necessary. Indeed, plaintiff admits, "there is no medical evidence in the record showing a prescription or recommendation from a doctor for a cane". Plaintiff argues, "his neuropathy and unsteady gait establish the need for a cane" but provides no evidentiary support from the record or any caselaw to support his position. Plaintiff's allegations are belied by the medical record. While Dr. Domingo noted, in October 2011, that plaintiff's gait was "unsteady", the plaintiff did not appear for that examination with any ambulatory device. From 2009 through 2011, plaintiff was treated at Community Care Physicians. The doctors and providers consistently found that plaintiff's gait was normal and there are no references to any need for an ambulatory device. (T. 520 - 570). On November 9, 2011, one month after plaintiff's examination with Dr. Domingo, plaintiff was examined by Kristine Campagna, D.O. at Community Care Physicians.[6] Dr. Campagna examined plaintiff after he discharged himself from the hospital "AMA".[7] Dr. Campagna's examination was two months prior to the administrative hearing and she noted that plaintiff was in "no acute distress" and made no reference to any ambulatory device nor did she suggest that plaintiff utilize such a device. (T. 521).

While plaintiff now admits that his cane was not prescribed by a doctor, during the administrative hearing, plaintiff appeared with a cane and testified that it was prescribed by Dr. Osborn "about a year ago". That allegation is not corroborated by Dr. Osborn's records.

---

[6] D.O. is an abbreviation for Doctor of Osteopathy. *Dorland's* at 2140. Osteopathy is any disease of a bone. *Id*. at 1368.

[7] AMA is an abbreviation for "against medical advice". http://www.medilexicon.com (last visited May 1, 2014).

Having thoroughly reviewed plaintiff's entire medical record, the Court finds that the ALJ's RFC analysis is supported by substantial medical evidence.

**II.     Credibility**

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).  If plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).  The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether plaintiff's statements about the intensity, persistence, or functionally limiting effects of her symptoms are consistent with the objective medical and other evidence. *See* SSR 96 7p, 1996 WL 374186, at *2 (SSA 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the case record.  SSR 96 7p, 1996 WL 274186, at *5 (SSA 1996).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony. *Saxon v. Astrue*, 781 F.Supp.2d 92, 105 (N.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)).  An ALJ rejecting subjective testimony must do so explicitly and with specificity

to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence. *Melchior v. Apfel*, 15 F.Supp.2d 215, 219 (N.D.N.Y.1998) (quoting *Brandon v. Bowen*, 666 F.Supp. 604, 608 (S.D.N.Y.1987) (citations omitted)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and his own activities during the relevant period. *Howe Andrews v. Astrue*, 2007 WL 1839891, at *10 (E.D.N.Y. 2007). The ALJ must also consider whether "good reasons" exist for failing to follow the prescribed treatment, e.g. religious objections, lack of ability to pay, significant risks associated with treatment. SSR 82 59; *see also Grubb v. Apfel*, 2003 WL 23009266, at *4 *8 (S.D.N.Y. 2003).

On the issue of credibility, the ALJ cited to plaintiff's inconsistent testimony, the medical record and opinion evidence and concluded that plaintiff's allegations were "not credible". (T. 17-18). Specifically, the ALJ noted that while plaintiff alleges he is unable to work, "his daily activities include light chores, walking, some shopping, driving, vacuuming and mowing the lawn". (T. 17). Further, the ALJ noted that plaintiff's "complications and hospitalization related to claimant's diabetes are a direct result of his failure to manage and treat his diabetes properly". (T. 17). The ALJ suggested that plaintiff's failure to follow treatment implies that "his conditions are not as severe as alleged". (T. 18).

Plaintiff does not dispute that he was non-compliant with his treatment but contends that the ALJ's credibility analysis is flawed because he failed to consider plaintiff's inability to afford medical treatment and his diminished mental capacity as justifiable causes for failing to follow medical advice and treatment plans.

**A.     Lack of Insurance/Ability to Afford Treatment**

Upon review, the Court notes that the medical record contains a plethora of notations by different medical providers regarding plaintiff's failure to comply with treatment protocol. In September 2010, October 2010, March 2011, June 2011 and October 2011, plaintiff was hospitalized for right foot cellulitis, diabetic ketoacidosis and other complications from diabetes that were caused by plaintiff's poorly controlled diabetes, failure to follow up with physicians, and plaintiff's unstable diet. (T. 229 - 305). Moreover, as noted *supra*, plaintiff discharged himself from the hospital in October 2011 against the advice of the doctors. (T. 423). From 2009 through 2001, plaintiff's providers at Community Care Physicians consistently noted that plaintiff's medical and dietary compliance were "poor" and "below average". (T. 532- 569). In March 2011, plaintiff was examined by Dr. Samer Eldelry at The Endocrine Group. Dr. Eldelry noted that plaintiff's diabetes was poorly controlled. (T. 329).

The ALJ acknowledged the aforementioned evidence and concluded that plaintiff's failure to comply with medication, diet, and his treatment or monitoring of his diabetes and neuropathy was a factor in determining that plaintiff was less than credible. The ALJ did not reference plaintiff's failure to manage and treat his diabetes properly to negate other compelling evidence or as the sole reason for discrediting his testimony, but properly mentioned it as one of the factors used in analyzing plaintiff's credibility. *See Campbell v. Astrue*, 596 F.Supp.2d 446, 454 (D.Conn. 2009), *see also* SSR 96 7p, 1996 WL 374186, at *5 (a claimant's statements "may be less credible . . . if the medical reports or records show that the individual is not following the treatment prescribed . . . ). The ALJ did not discuss or accept plaintiff's alleged inability to obtain insurance and/or lack of money to pay for his care. The Court does not find this to be reversible error because there is no evidence in the record demonstrating that plaintiff failed to comply with his treatment plans due to financial constraints. *See Berardo v. Astrue*, 2010 WL 3604149, at *5

(N.D.N.Y. 2010) (citing *SSR* 96 7p, 1996 WL 374186, at *5 ("[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.")). In his brief, plaintiff cites to records from 2010 that he claims prove that plaintiff lacked insurance. However, more recent hospital records from October 1, 2011 contain notations in the "insurance" section for a primary insurance plan and secondary insurance with two insurance policy numbers. (T. 420). Furthermore, on July 22, 2011, Dr. Osborn examined plaintiff and noted, plaintiff "has supplies and needs to set up insulin pump". (T. 524). There is no mention in any records from any provider that plaintiff was unable to afford treatment. In addition, the record contains further evidence supporting the ALJ's refusal to consider plaintiff's lack of financial means as an excuse for failure to seek treatment. To wit, on June 27, 2011, plaintiff was examined at Community Care Physicians complaining that he could not sleep and for a follow up from a recent visit to the emergency room. (T. 525). Dr. Kyle Osborn noted that plaintiff was in "rehab for crack abuse" and that his diabetic diet was not controlled while he was in rehabilitation. (T. 526). While plaintiff's physicians consistently noted and discussed plaintiff's "poorly controlled" diabetes and his non-compliance, the records are devoid of any mention of lack of financial means as a reason for plaintiff's failure to follow his physicians' orders. Accordingly, the Court finds no basis for remand on this issue.

**B. Mental Capacity**

Plaintiff claims his lack of education explains his failure to follow treatment protocol. Courts have held that, "[it] is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation". *Taylor v. Colvin*, 2014 WL 788842, at *11 (N.D.N.Y. 2014) (citing *Day v. Astrue*, 2008 WL 63285, at *5 n. 6 (E.D.N.Y. 2008)).

Plaintiff admits, "there are no education records or evidence as to [plaintiff's] learning ability" but surmises that "it is very possible that Mr. Canabush simply lacks the basic understanding of his condition and does not have the mental capability to manage his care on his own". The ALJ discussed plaintiff's claims relating to mental impairments and found that plaintiff did not suffer from any mental impairments and further, that plaintiff's claims were not fully credible. During the administrative hearing, plaintiff did not testify that he suffered from any mental impairments. Indeed, the ALJ asked, "Do you have any other problems besides the diabetes?" and plaintiff responded, "No. That's it". (T. 40). The ALJ noted, "claimant is not being treated by any physician or taking any medication for his mental impairment, nor does it appear that claimant has sought such treatment". (T. 17). Plaintiff has not challenged the ALJ's findings with respect to plaintiff's mental impairments and has not cited to any evidence in the medical record to support the claims in his brief. The record is devoid of any evidence establishing that plaintiff did not understand medical instructions or treatment plans when communicated by his physicians. Accordingly, the ALJ's analysis of the record and decision as to the plaintiff's credibility is supported by substantial evidence.

Plaintiff's arguments and challenges to the ALJ's credibility analysis are mere conjecture wholly unsupported by any medical evidence or relevant caselaw. Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ applied the correct legal standard, enumerated in 20 C.F.R. § 404.1529(c)(3)(i)-(iv), in assessing plaintiff's credibility. Taken as a whole, the record supports the ALJ's determination that plaintiff's claims were not entirely credible and the ALJ adequately specified the reasons for discrediting plaintiff's statements.

**CONCLUSION**

For the reasons stated above, it is hereby **RECOMMENDED** that the Commissioner's decision denying disability benefits be **AFFIRMED** and plaintiff's motion for judgment on the pleadings (Dkt. No. 10) be **DENIED**.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993); *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C §636(b)(1); FED R. CIV. P. 72, 6(a), 6(e).

It is further **ORDERED** that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated: May 9, 2014
      Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge